**David BAUGUS, Plaintiff,**

v.

**CSX TRANSPORTATION, INC., Defendant.**

**No. 3:03 CV 7731.**

United States District Court, N.D. Ohio, Western Division.

Sept. 27, 2004.

tal complaint are against GE Capital, not against QSI.

David L. Lockard, Philadelphia, PA, for plaintiff.

J. Randall Engwert, Mark D. Meeks, Anspach Meeks Ellenberger, Robert M. Anspach, Anspach, Meeks & Nunn, Toledo, OH, for defendant.

## ORDER

CARR, District Judge.

This is an FELA case in which the defendant has filed a motion in limine seeing to prevent introduction at trial of a videotape made by the plaintiff and two other then-current or former CSX employees. For the reasons that follow, the motion shall be granted.

The plaintiff and the other two participants worked at side track facilities in Marysville and East Liberty, Ohio, loading multi-level "autoracks" (cars for transportation of motor vehicles). They created the film, which purports to show one or more of the individuals performing activities similar to those required to load and unload the rail cars.

At the time of filming, plaintiff had not filed this suit, though he had incurred the injury giving rise to this litigation. Thus, leave had not been granted under Fed. R.Civ.P. 34(a)(2) to enter the premises or board the rail cars. No prior notice was given to or permission obtained from Honda Motor Company, which owned the siding on which the cars were located, or from CSX, which had placed the cars at that location. The filming occurred in the Springtime in the middle of the night. Plaintiff had been injured in the Winter at about 1:30 p.m.

Defendant raises several challenges to the film's introduction, including, *inter alia*, that it does not accurately show the nature and mode of plaintiff's usual work; only about a minute of its fifteen minute length shows end doors being opened (the plaintiff having been injured while opening an end door), and its admission would contravene Rule 34(a)(2).

Plaintiff contends that neither permission from CSX nor approval under Rule 34(a)(2) was necessary. He also alleges that the time of year or day when the tape was made is immaterial because its purpose is simply to aid the jury's understanding of how the plaintiff performed his duties. He points out that the tape was admitted by another judge of this court in a suit by another CSX employee who claimed to have incurred similar injuries while opening an end door of a rail car.[1]

There can be no doubt that the plaintiff created the tape in anticipation of filing suit. This was not an casual tourist's documentary which happens—like the Zapruder tape of November 22, 1963—to gain unexpected importance: this tape was purposefully made surreptitiously and ex parte manner solely to create videographic evidence for later litigation.

Among the purposes of Rule 34(a)(2) would appear to be to prevent exactly this sort of undertaking. The rule contains, moreover, many safeguards that were not followed here—most notably, an opportunity for the other side to be present and have the assistance of counsel. Such assistance helps ensure that what is seen or done is pertinent,

---

1. I note that many of the arguments made by counsel in this case were not made by counsel in that case. In any event, absent a formal ruling of persuasive force from my esteemed colleague (his ruling having been made, apparently, in the midst of trial), I decline to be bound by his determination that the tape was admissible.

and that any record that is created is accurate. Such assistance also lessens the likelihood of later dispute or challenge to the admissibility of evidence about what was done or seen. It avoids, in a word, the kind of eve-of-trial motion in limine that defendant has had to bring in this case.

■ Rule 34 protects and furthers other interests as well. Among these are that the rule, by enabling a court, rather than a single party, to decide whether to permit entry, and if permitted, to prescribe its conditions, also allows a "balancing of the degree to which the proposed inspection will aid in the search for truth against the burdens and dangers created by the inspection." *Teer v. Law Engineering and Environmental Services, Inc.*, 176 F.R.D. 206 (E.D.N.C.1997) (citing *Belcher v. Bassett Furniture Industries, Inc.*, 588 F.2d 904 (4th Cir.1978)).

Where a party acts unilaterally, this balancing cannot occur. Where the party has gone at night into a rail yard to film others climbing on and about rail cars and manipulating equipment and appurtenances, it would have been especially appropriate to have obtained prior consent or judicial approval, if consent were withheld, for such entry.

Risk of injury is a constant feature of railroads. This is especially true at night-time, or when unexpected trespassers are on the property. The risks are doubled, at least, when trespassers not only enter unannounced, but do so under cover of darkness. Indeed, one can assume, from the timing of the entry, that the plaintiff and his companions took precautions not to be observed— i.e., to conceal themselves from others who may have been doing their jobs, ignorant of their presence.

Plaintiff sought deliberately (though, perhaps ignorantly) to by-pass the provisions of Rule 34(a)(2). His efforts should not be allowed to succeed. If they were, other prospective plaintiffs would be encouraged to follow his lead, and go, without permission, who knows where, and expose themselves to who knows what dangers. The underlying, and important purposes of Rule 34(a)(2) can be upheld only if the motion in limine is granted.

This is true, even if, as appears unlikely, the film is in whole or part otherwise admissible. I have doubts that it is, given the conditions under which it was made. But I need not address those concerns: the tape will not be admitted because it should not have been produced in the manner and at the time it was.

It is, therefore,

ORDERED THAT defendant's motion in limine to exclude plaintiff's "Railroad Work" video (Doc. 19) be, and the same hereby is granted.

So ordered.