271 F.Supp. 454 (1966)
UNITED STATES of America, Plaintiff,
v.
BUILDING AND CONSTRUCTION TRADES COUNCIL OF ST. LOUIS, MISSOURI, AFL-CIO et al., Defendants.
No. 66 C 58(2)
United States District Court E. D. Missouri, E. D.
July 29, 1966.
*455 *456 Richard D. FitzGibbon, Jr., U. S. Atty., R. H. Kubie, Asst. U. S. Atty., Gerald W. Jones and Wm. F. McCabe, Attorneys, Southwestern Section, Civil Rights Div. U. S. Dept. of Justice, Washington, D. C., for plaintiff.
Clyde Craig, Jean Souders and Harold Gruenberg, St. Louis, Mo., for defendant Laborers Local 42.
Charles A. Werner, Schuchat, Cook & Werner, St. Louis, Mo., for defendants Locals 1 and 36.
Malcolm L. Bartley and Donald Siegel, Bartley, Siegel & Bartley, Clayton, Mo., for defendants Bldg. & Const. Trades Council & Local 35 and St. L. Journeymen Plumbers.

MEMORANDUM
MEREDITH, District Judge.
This matter is pending on plaintiff's objections to certain interrogatories propounded by the defendants and upon plaintiff's motion for the production of documents and records. The nature and background of this case is fully set out in a memorandum dated July 26, 1966, 271 F.Supp. 447 in which the Court considered the defendants' motions to dismiss. We shall deal first with the objections to interrogatories.
Defendants have served three sets of interrogatories in this case. The first set, consisting of eight interrogatories, is directed to Edward C. Sylvester, Director, Office of Federal Contract Compliance, United States Department of Labor. These interrogatories seek to discover (1) if the Office of Federal Contract Compliance referred any alleged violation of Executive Order 11246 in connection with the Jefferson National Expansion Memorial to the Department of Justice; (2) the date and nature of such referral; (3) the manner in which the alleged violation was brought to the attention of the Office of Federal Contract Compliance; (4) whether any complaints charging a violation of the Executive Order were filed prior to such referral; (5) what investigation of such complaint(s) was made prior to the referral, the dates of investigation, the names of the investigators, and whether any reports of the investigation were prepared; (6) the grounds upon which it is believed "there is substantial and material violation or the threat of substantial and material violation" of the contract provisions required by the Executive Order; (7) the facts known supporting the referral, if any, to the Department of Justice; and (8) whether there were any other direct or indirect referrals alleging violations by defendants of the Executive Order or Title VII of the Civil Rights Act. (These interrogatories will be referred to as OFFC No. 1 through No. 8.)
The second set of interrogatories, directed to the Chairman of the Equal Employment *457 Opportunity Commission, seeks to discover (1) how many complaints have been filed alleging violations by the defendants of Title VII of the Act in a stated geographical area in Missouri; (2) the date, union complained against, nature of the discrimination charge, date of such discrimination, and the number of persons discriminated against, with regard to each such complaint; (3) the total number of complaints filed against any labor unions, not limited to defendants, charging violations of Title VII within the stated geographical area; (4) the total number of complaints filed against labor unions of all types throughout the United States charging violations of Title VII; (5) a summary of any industry breakdown of such complaints, if any has been made; (6) whether the Commission or any of its agents participated in the investigation, preparation or decision to institute the instant suit; (7) the names, titles, and nature of participation of the Commission officials involved; and (8) any facts known to the Commission relevant to the allegations of the complaint. (These interrogatories will be referred to as EEOC No. 1 through No. 8.)
The third set of interrogatories, directed to the Attorney General, seeks to discover (1) whether the Attorney General personally made a finding of "reasonable cause to believe" that defendants engaged in a "pattern or practice" of resistance to the full enjoyment of the rights secured by Title VII; (2) when made; (3) whether it was based on the results of investigations conducted by agents of the United States; (4) the dates of such investigations and the names of the investigators; (5) the names and addresses of all persons contacted during the investigation; (6) whether such persons furnished reports or statements concerning the violations alleged in the complaint; (7) the date and name of the person making such report and the name of the government official having custody thereof; (8) whether the results of the investigation were set forth in any reports; (9) the date of preparation and name of the person having custody of such reports; (10) any other documents considered by the Attorney General in making his determination of "reasonable cause" and the name of the official having custody of the same; (11) whether anyone was present with the Attorney General when he made his determination of probable cause; (12) whether the determination of "reasonable cause" was set forth in any written document; (13) the nature and date of such document, to whom it was directed, to whom copies were sent, and the name of the official having custody thereof; (14) the date on which the Government began to prepare the complaint filed herein; (15) the date when the alleged violation of Title VII was referred to the Attorney General for a determination of reasonable cause; (16) the facts upon which the Attorney General relies to support his finding of reasonable cause; (17) the facts upon which the Attorney General relies to support the allegation that defendants have failed and refused to recruit and accept Negroes upon the same basis as white persons; (18) the names and addresses of all Negroes known whom the defendants failed to recruit and accept on the same basis as whites; (19) the facts relied upon to support the allegation that defendants have failed to accord Negro members the same privileges and advantages as white members; (20) the names and addresses of all Negroes known who have been accepted for membership, but who have not been accorded the same privileges and advantages as white members; (21) the names and addresses of all Negroes known to have been excluded from membership; (22) the name and address of each Negro alleged to have been discriminated against by defendants on account of race, with respect to membership or employment, the date of such discrimination, and the means by which such discrimination was effected; (23) regarding each Negro allegedly excluded from membership, his name and address, the union, the date he applied, and the date he was rejected; (24) whether any *458 individual allegedly discriminated against has filed a complaint with the United States or any agency thereof; (25) the number of such complaints, the date, union involved, and substance of the complaints; and (26) the names and addresses of all persons known to the Department of Justice to have information concerning the facts in this case. (These interrogatories will be referred to as AG No. 1 through No. 26.)
The government originally objected to all of the above interrogatories on the grounds that they were irrelevant and beyond the scope of permissible discovery; that they seek information as to the Attorney General's determination of reasonable cause, which determination is no part of this lawsuit and thus not subject to discovery; and that the interrogatories call for disclosure of the identities of persons giving information and complaining to the United States government rather than the names of persons who are potential witnesses or who possess relevant information. Subsequently, the plaintiff determined to answer, and has answered, interrogatories AG Nos. 17, 18, 19, 20, 21, 22, 23 and 26.
We have dismissed plaintiff's first claim in our Order and Memorandum dated July 26, 1966. Accordingly, plaintiff will not be required to answer interrogatories OFFC No. 1 through No. 8. If defendants still desire some of this information, they may propound further interrogatories.
Interrogatories EEOC Nos. 1 and 2 are objected to as attempting to elicit information bearing upon the basis of the Attorney General's determination of "reasonable cause". EEOC Nos. 3, 4 and 5 are objected to as seeking information as to labor organizations in no way connected with this lawsuit. EEOC Nos. 6 and 7 are alleged to be irrelevant, dealing with the participation by Commission officials in the investigation and preparation of this lawsuit. EEOC No. 8 is alleged to be available to the defendants upon properly framed interrogatories to the United States. Interrogatories AG Nos. 1 through 16, 24, and 25, are objected to as seeking to elicit information concerning the basis upon which the Attorney General made his determination of reasonable cause.
In their motions to dismiss, the defendants contended that the Attorney General was required to plead that he had made a determination of "reasonable cause" to believe that the defendants were engaged in a "pattern or practice" of resistance to the enjoyment of rights secured by Title VII of the Civil Rights Act. We have rejected that argument. The statute clearly sets out what the complaint must include, and makes it clear that the matter to be litigated by the courts is whether the defendants have engaged in such a "pattern or practice". The defendants attempt to draw on the analogy of "probable cause" in criminal cases, but, of course, that is a constitutionally derived requirement and is broadly different from the "reasonable cause" requirement placed upon the Attorney General. The defendants also cite cases involving petitions for injunctions filed by Regional Directors of the National Labor Relations Board. That again is an entirely different matter. The power of the courts to enter those injunctions, designated to protect and preserve the jurisdiction of the NLRB over pending cases, is conditioned upon a finding of reasonable cause to believe that a violation has occurred. In this connection, see the remarks of Congressman Celler set out at 110 Cong.Rec. 15895.
Since we do not intend to allow the issue of the Attorney General having "reasonable cause" to be litigated, the plaintiff will not be required to answer interrogatories couched in those terms. This includes interrogatories AG No. 1 through AG No. 16, and interrogatories EEOC Nos. 6 and 7. Interrogatories EEOC Nos. 1, 2, 3, 4, 5 and 8 and interrogatories AG Nos. 24 and 25 are not directed to the Attorney General's finding of "reasonable cause", are relevant to the issue whether defendants have engaged *459 in conduct violative of the Act, and accordingly will be answered.
Turning now to the plaintiff's motion to produce, this motion seeks documents and records dating back to 1950. Request No. 1 is addressed to the Trades Council and seeks constitutions and bylaws in effect since 1950 and minutes of all meetings since September 1, 1965. Request No. 2 is addressed to Plumbers Local No. 35, Sheet Metal Workers Local No. 36, and Electrical Workers Local No. 1 and seeks constitutions and by-laws since 1950, collective bargaining agreements since 1950, records and documents concerning members since 1950, records concerning applications for membership since 1950, examinations and interviews respecting applicants since 1950, records concerning persons registered at the Union Halls for referral to employers since 1950, records concerning stewards and foremen at jobsites since 1950, rules and regulations pertaining to apprenticeship programs, records concerning applications for admission to the apprenticeship programs and the conduct and results of the apprenticeship programs, and minutes of meetings of the local unions and the various executive councils since 1950.
The defendants have opposed this motion on the grounds that "good cause" has not been shown, as required by Rule 34, F.R.Civ.P.; that "good cause" has not been shown regarding records prior to the effective date of the Civil Rights Act of 1964; that the records are irrelevant; that the extensive time involved makes the motion oppressive and burdensome; that the defendants have no records designating the race or color of any person as requested in the motion; and that the defendants do not have possession, custody and control of the requested apprenticeship records, such records and documents being in the possession, custody and control of the respective Joint Apprenticeship Committees.
The defendants' objections to the production of the apprenticeship records and documents are well taken. Rule 34, F.R. C.P., applies to documents and records in the possession, custody and control of the party. The affidavits filed herein show that the defendants do not have control or custody of the apprenticeship records. Accordingly, plaintiff's motion to produce will be denied with respect to items 2(i), (j), (k) and (l).
Regarding the other records and documents requested, we are of the opinion that the only objection of merit is the contention that plaintiff has failed to show good cause. These items are relevant to the subject matter of this lawsuit. The fact that the statute did not become operative until July 1965 does not render evidence of prior conduct irrelevant. While the law may be prospective, as argued by the defendants, it is prospective only in the sense that conduct prior to the effective date cannot constitute a violation of the Act. But, in considering whether defendants have violated the statute, evidence of prior courses of conduct is clearly relevant.
We are also of the opinion that plaintiff has made a sufficient showing of good cause. The defendants cite Schlagenhauf v. Holder, 379 U.S. 104, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964), for the proposition that the "good cause" requirement is not a mere formality. We agree. However, the district judge must exercise a significant degree of discretion in passing on this question of good cause, and must give due consideration to the fact that Rule 34 is an essential part of a liberal and integrated scheme for the full disclosure of relevant information so as to facilitate the just settlement of litigation. United States v. National Steel Corporation, 26 F.R.D. 603 (S.D.Tex.1960). In Mitchell v. Bass, 252 F.2d 513 (8 Cir. 1958), the Court held that good cause existed where the documents and records sought were relevant, material and otherwise unavailable. In considering whether the material is otherwise unavailable, the Court should give due weight to considerations of practical convenience. Karlsson v. Wolfson, 18 F.R.D. 474 (D.Minn.1956). *460 See also Crowe v. Chesapeake and Ohio R. Co., 29 F.R.D. 148 (E.D.Mich.1961), and Johnson v. Ford, 35 F.R.D. 347 (D. Colo.1964).
In the present case, the information sought by this motion to produce could be obtained in part by a laborious course of interrogatories, depositions and use of the subpoena duces tecum. It is ridiculous to impose such a burden on the parties. Speaking from a practical point of view, the information sought is unavailable absent production. In this connection, see the distinction made in Guilford National Bank of Greensboro v. Southern Ry. Co., 297 F.2d 921, 925 (4 Cir. 1962), between the production of business records and the production of witness statements.
We find that plaintiff has shown ample good cause and the motion to produce will be sustained with regard to items 1(a) and (b), and 2(a), (b), (c), (d), (e), (f), (g), (h) and (m). Of course, to the extent that defendants do not have the documents showing the information sought, they may so specify when producing the documents.